## In re Plunkett's Creek Township.

*Township lines—Ascertainment of—Practice—Act of April 15, 1834.*

Commissioners were appointed to "run, review and locate a line" between two townships, upon a petition which stated that "the location of the division line between said townships was not located in accordance with the desire of the petitioners who petitioned for a view to establish said line," and their report was absolutely confirmed.

*Held*, That this proceeding was void as not being authorized by the act of April 15, 1834, P. L. 539, or by any other act, and was therefore no bar to subsequent proceedings under the said act for the ascertainment or establishment of said township lines.

Argued March 14, 1892.   Appeal, No. 27, July T., 1891, by Shrewsbury Township, from decree of Q. S. Lycoming Co., Sept. Sess., 1889, No. 112, on petition of citizens of Plunkett's Creek Township.   Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Petition by citizens of Plunkett's Creek township to ascertain and establish the line between Plunkett's Creek and Shrewsbury townships.

The facts appear by the opinion of the court below, IKELER, P. J., of the Twenty-sixth judicial district, specially presiding, dismissing exceptions to the report of viewers, which was as follows:

"Exceptions to the report of viewers to view and mark on the ground and ascertain and establish the true line between Shrewsbury and Plunkett's Creek township in the county of Lycoming:

"The first, second, third, fourth and fifth exceptions involve the same questions passed upon by the court before the appointment of the viewers, and are therefore dismissed.

" The sixth, seventh and eighth exceptions relate to the power and authority of the viewers and may and will be considered together. They involve an investigation of the existence of township and county lines in that location since 1802. It appeared that, in 1802, Muncy township contained most of the territory now comprising Wolf, Plunkett's Creek, Shrewsbury and parts of Cascade and McIntyre townships, in Lycoming county, and, as testified to by Judge Eldred, 'run clear up to the Bradford county line and clear over to Lycoming creek.'

" In 1803 a petition was presented to the court of quarter sessions, of Lycoming county, under the act of assembly of March 24 of that year, asking that a new township, to be called 'Shrewsbury township,' be erected out of the back parts of Muncy and Loyalsock townships. It was so ordered, as the records show, without the formality of a view, which, at that time, was not considered necessary by the court.

" At April sessions, 1804, and soon after Shrewsbury had been declared a township by an order of the court, on petition of citizens, William Benjamin was appointed to run the southwest and south boundary lines of said new township, to wit: From a place called Indian Pictures, now Picture Rocks, westwardly or northwestwardly course to intersect a road leading from Webster's to Hill's, two miles north from said Webster's, and thence westwardly, the general course of the Allegheny mountains, to the Loyalsock creek.

" At September sessions, 1804, before Mr. Benjamin had made a report of the south and southwest lines of Shrewsbury, two petitions, copies of which, by agreement, are in evidence as exhibits 'B' and 'C,' signed by citizens, were presented to the court asking for a division of Shrewsbury township by certain boundaries, therein stated, calling for 'a direct line from a point south of the Allegheny mountains, half of the distance between Indian Pictures to the road leading to John Hill's to the Big Bend of Loyalsock, above what is called Brimstone Falls.'

" In these petitions, now on file at the clerk's office at Williamsport, according to the evidence of Judge Eldred, who officiated as clerk and prothonotary in the office of Lycoming county since that time, and as commissioner and surveyor of

the line in dispute in 1885, was found a third loose paper, naming the proposed new township of Elkland, giving its description and calling for the line, now in dispute, to begin half way between two lately laid out roads, one leading to Peter Carson's and the other leading to John Hill's. But from what place they lead was not stated. And he said, 'that it is the only evidence we have' of the formation of Elkland township. If we did not have that, there is no other 'evidence that there was a township by that name.'

"Now, the original inquiry, and the one which has brought on all this difficulty, confusion and litigation, was, and is now, where were those two newly laid out roads? Judge Eldred says that the Genesee road, where the stone heap is—the established and recognized corner at the southern extremity or end of the disputed line for seventy or eighty years—'is not one of them.' 'It was not a new road at that time. The Bear Creek road was a mile or so west of the Genesee road.' 'I think the Bear Creek road was one of them, but could not tell where the other was.' He said: 'The loose paper fixed the beginning somewhere near where it is located at the Genesee road, and the only one we could go by.'

"The original township of Shrewsbury contained what is now Shrewsbury and Plunkett's Creek, in Lycoming county, and Cherry, Forks, Elkland and Fox, in Sullivan county. Elkland township was formed out of part of Shrewsbury in 1803, and Plunkett's Creek township out of Elkland in 1835. The upper part still remains as Elkland, in Sullivan county, which latter was established in 1847, the county line being run in 1848. Elkland township, in Lycoming county, now Plunkett's Creek, extended to Shrewsbury line now in dispute, and is the original line between Shrewsbury and Elkland.

"Among the records and attached to the files in No. 61, December session, 1886, is found a copy of a line alleged to have been plotted by William Benjamin in 1804 as and for the boundary and disputed line between Plunkett's Creek and Shrewsbury townships.

"It is very evident, from the work of subsequent surveyors and the evidence of Col. A. H. McHenry and Judge Eldred, that Benjamin did not run the line from end to end. He did mark a place or point at the Big Bend on the Loyalsock creek,

on the division line between Shrewsbury and Elkland townships—now Shrewsbury and Plunkett's Creek—and also a point between Picture Rocks and the stone heap at the Genesee road.

"The third paper and the petition of 1804 manifestly contemplate a beginning of the line between the townships at a point or corner on the Muncy, now Wolf, and Shrewsbury boundary line, which would admit of two direct and straight lines from it. One to run from the Loyalsock or Brimstone Falls, and the other westward to the Loyalsock where the Allegheny mountain crosses the same. There is but one point that will answer this intention and call for two straight lines. A beginning at any other point would be a deformity. All parties concede that it was to be a direct line, and the terminus at the wolf-trap, Big Bend or Brimstone Falls on the Loyalsock is conceded by all to be correct. All interested have regarded the point where the stone heap is, on the Genesee road, as the proper southeast corner since 1804. Both Shrewsbury and Elkland townships were originally formed on petition with their boundaries described therein, without a boundary line having first been run and marked. And whether Benjamin marked it or not prior to 1842, all parties have recognized it for seventy or eighty years, and it is further supported by the fact that the southeast corner of Elkland township, now Plunkett's Creek, is only determined by the closing line of Elkland township when applied for and surveyed by Mr. Benjamin. Which is the north line of Muncy township, now Wolf and Mill Creek? Which brings you to the northeast corner of Wolf township, the southwest corner of Shrewsbury and the southeast corner of Plunkett's Creek, or the stone heap at the Genesee road—the beginning or southern terminus of the division line between Shrewsbury and Plunkett's Creek townships?

"Col. McHenry acknowledged this as the proper corner in 1842, when he ran the line at the request of the supervisors of Shrewsbury township and the court, without any order issuing from the court for that purpose. He ran the line up from Indian Pictures to the Genesee road; then went over to the other end and found that line to bear date of 1804. He ran it about one mile and three eighths, when its entire length is about

ten miles, and at the other end made the stone heap at the Genesee road, at the foot of the mountain.   It was known as the Benjamin line, and although rather badly run, passed for the line at that date.   It seems that Benjamin and his party, in 1804, did not run the line from the Brimstone falls further than the white ash at Mr. Hill's, about one mile and three eighths, and then gave it up as did McHenry, in 1842, after going one mile and three eighths.   In those days the territory was one vast wilderness and swamp, and McHenry continued the line through as in the return of Benjamin's draft by plot and protraction, without marking it upon the ground all the way.   He says in his testimony : ' Continuing the line southwestward to the poplar I found I was not within a mile or two of the point designed to be connected on the paper, and turned from there south, sixty-seven west until I struck the old Genesee road, and then down it to the stone heap.'

" But Mr. McHenry was not so officially employed as to bind any township by what he did in 1842.   Plunkett's Creek township was not consulted or notified in the matter, and the line he ran, when a commissioner in 1874, with Steck and Kahler, seems to have been run in the same manner with the same courses and distances.   Exhibit ' D,' being the copy of the straight, alleged Benjamin line of 1804, Col. McHenry says is his work.   ' It seems to represent the boundary line from the wolf-trap through between Plunkett's creek and Shrewsbury townships, beginning at a road lately laid out between Abraham Webster's and John Hill's, opposite the lake in the Allegheny mountains, and thence in a right line to the Big Bend in the Loyalsock.   But I am not prepared to say where it is in relation to the wolf-trap.   This don't seem to connect with any other.   This, the last course from the Loyalsock to the county line, seems to be above the wolf-trap.   I do not know where the hemlock call there is located.   Have no knowledge of it only as I see it here.   The draft is a protraction of what I found in the prothonotary's office.'

" If evidence at all, it goes to show that the Benjamin line of 1804 is an imaginary one, not marked upon the ground or connected with any other at either of the recognized and heretofore admitted termini of the said division line.

" As shown by the records in evidence, the first commission

to run and establish the line between Shrewsbury and Elkland townships, now Plunkett's Creek, was appointed in 1859; could not alter or change, but only ascertain and establish as fixed in the order of September sessions, 1804. The same must be said of the commission appointed in 1874, both of which ran and reported a crooked and indirect boundary line between the two townships, different and varying from the one fixed and directed in the order erecting them, and consequently erroneous and not binding upon the township concerned.

" The fact that the townships have worked the roads, paid taxes and supported paupers to the lines as run in 1859 and 1874 is some evidence of where the division line was understood to be, but this, however, would not make it such, and does not conclude either township. It is not or cannot be contended that the Benjamin line, marked exhibit ' B ' and said to be located in 1804, was run or ascertained and established under the act of April 15, 1834, or its supplement of April 26 of 1854.

" Judge E. B. Eldred testifies that ' the line run by the commission of 1889 is practically the same as that run by his commission in 1885. Neither found any marks of 1804, except at the termini, because they knew the other lines, so far as they had been marked upon the ground, to be way off. We were appointed to fix the correct line from one corner of the township to the other, and we knew of these other two surveys, where they were, and we decided that there must be a direct line, and after concluding that we could not change the corner on the Genesee road at the foot of the Alleghenies, we ran to the county line on a direct line with the wolf-trap as near as we could. I never heard any one dispute that corner at the Genesee road. The overseers and supervisors of Shrewsbury township were with us and they didn't dispute that McHenry ended his survey there. Major McHenry told me that the line running west from the corner was the township line that Mr. Benjamin had run, and from my personal examination it would be about right for that. The older inhabitants all said that since they could remember there had never been any dispute about it.

" The evidence clearly shows that the direct line from beginning to end—more than ten miles in length, and most of it mountainous and a dense wilderness—was never actually

run and marked upon the ground, until the commission of 1889 did it.

"H. S. Lucas, one of the commissioners of 1885, says: 'Judge Eldred and Mr. McMicken and the other viewers and I met other parties at Picture Rocks in November, 1885, to run this line. I was to bring some of the papers, which Judge Eldred did not take from the prothonotary's office, with me, which I did. There were three of them. They were blurred and quite dim, but still they could be read. We ran from Picture Rocks to the Genesee road at the stone heap. Parties there present told us that Wolf, Shrewsbury, Plunkett's Creek and Mill Creek townships cornered at that point. We hadn't yet fixed it as the point. Whilst we were there one morning trying to find the point to start, other gentlemen from Shrewsbury township and Mr. McHenry, the surveyor, who stated that that was the point he desired to make, but that he had started at the other end of the line, at a place called the wolf-trap, and came through. That he had made that as one point and this stone pile as the point at this end of the line. He said that these points were fixed by papers in the case. And as I said, that was the point we were trying to find when we made this survey up from Webster's when he told us where it was. We spent most of the day with Mr. McHenry, who was explaining the courses and distances that he ran in order to make this point, and when he came to the Genesee road and found that he would not strike it, he then struck across to the Genesee road and followed it to the point. That night we staid at Huntersville, and Judge Eldred spent the night figuring out the points of the compass that would take him from this stone pile to the wolf-trap in a direct line. The next morning we met at this stone pile on the Genesee road and proceeded to lay out a straight line from it towards the wolf-trap. We went as far as the Sullivan county line and drove in a post and piled some stones around it and put some witnesses on the trees, and left it as our line and gave in our report. Whether we would have struck the wolf-trap I do not know.'

"Now the commission of 1889 ran from this same stone heap clear through to the wolf-trap, found the witnesses at the Sullivan county line and only missed the wolf-trap by thirty and

three tenths perches, which, in that distance of more than ten miles, should be considered approximately correct. They then ran a base line on engineers' principles, by back-sight and fore-sight, with stations numbered and distances recorded to each station clear through from the stone heap at one end and the wolf-trap at the other.

" The only question upon which there can be any doubt as to the correctness of this division line is that of the stone heap being the fixed point from which to start. And where there is doubt and uncertainty about which of the two points is the one called for in the boundary line, that should be adopted and taken as the true one which best accords with adjoining calls and corners of adjoining townships. Especially when it agrees with the calls and corners indicated. And thus Judge Eldred was enabled to establish the stone heap corner as the southern extremity of the boundary line by tracing the lines around it and taking bearings, which aided him in fixing it and convinced him that it was the identical corner that Mr. Benjamin fixed in 1804 when he was appointed a commissioner for that purpose.

" Samuel Neyhart, J. H. Maize and Joseph M. Gerringer, the commissioners appointed by the court in 1889 to inquire into the propriety of ascertaining and establishing the boundary line between Plunkett's Creek and Shrewsbury townships, report that they first inquired into such propriety and finding it necessary proceeded to ascertain and establish the same.

" S. D. Neyhart, an assistant surveyor with the commission, says: ' We started from the stone pile corner in the Genesee road because it bore evidence of the corner established in 1804 and was the only natural place a corner could be made under the circumstances. Plunkett's creek corners there; Shrewsbury and Wolf townships corner there. If you would change that corner you would change the lines of Wolf and Plunkett's Creek townships equally, and it was recognized by all parties on the ground as the corner.'

" And from this corner they started out to ascertain and establish the aforesaid line direct to the Big Bend of Loyalsock creek, above what is called the Brimstone Falls, and reported such of the same as is now within the territory of Lycoming county.

"Their report and the draft accompanying the same show that they did run a direct line from point to point, in strict accordance with discretion under their appointment, and according to the prayer of the petitioners.

"Their proceedings, being in all other respects correct, will not be set aside because their ascertained line does not correspond with any line previously reported. It does, however, exactly correspond with the line run and reported in 1885 by Judge Eldred's commission, but distinct in location between the termini from all others. The commissioners of 1889 were not restricted in their orders to any particular line previously run, but were to ascertain the true one adopted by the court in 1803, and if they have found and reported that one, although different from any other mark upon the ground since then, their report for that reason alone cannot be set aside.

"Hence, the sixth, seventh and eighth exceptions are not sustained. In deciding the ninth exception, I feel constrained to say that the court has not hitherto given the contention about this boundary line the serious consideration and care it required. Important interests have been and are involved. The very fact that three different lines have been returned into the office of the clerk of the quarter sessions of Lycoming county since 1803—each representing to be the true one, two of which (those of 1859 and of 1874) having been confirmed by the court—calls earnestly for a settlement of such uncertainty and dispute by ascertaining and establishing, according to law, which one or either is the true one adopted or intended to be adopted in 1803.

"It is alleged in the ninth exception that Nos. 3, December Sessions, 1885; 61, December Sessions, 1886, and 2, March Sessions, 1887, relative to the ascertaining or location of said boundary line are pending and undetermined.

"In answer to this we find from the evidence before us— that of the files of No. 3, Dec. Sessions, 1885, and of Judge Eldred—that it appears to be regular up to confirmation nisi returned to the court and filed in the clerk's office, where it remains of record with one half of a cover or face of the files torn off, and the whole having been submerged and nearly destroyed by the flood of June, 1889. By examination of the report itself we find it unconfirmed, but by careful comparison

and by the testimony of Judge Eldred and S. D. Neyhart, we find the line and termini therein reported to correspond exactly with the line run and reported by the present commissioners of 1889. And whilst the petitioners of 1889 might perhaps have asked the court to take up, complete and finally confirm the proceedings of 1885, yet they no doubt would have met with difficulty in getting it done. But by a proceeding de novo they doubled their risk and undertook to double their proof in support of their line. Besides citizens of the same township represented both petitions of 1885 and 1889. The reports corroborate each other, and the costs all having been paid, the beginning of the latter operates as an abandoning of the former by them, and in no way invalidates the latter, nor did it put the citizens of Shrewsbury township to any undue or unfair advantage to which they have any right to complain.

" No. 61, December Sessions, 1886, and No. 2, March Sessions, 1887, are proceedings under one petition and order, but by different bodies of commissioners. It appears that upon the original petition, Stuart, Laird and Reeder were appointed viewers by the court, and from time to time continued by the court until 1887, when it was again continued and the above named persons 'released from service as viewers and the following surveyors appointed in their places: George W. West, Danville, Pa.; A. J. Guffy, Watsontown, Pa., and O. J. Reese, Coudersport, Pa., to which the commissioners of Shrewsbury township objected,' etc. Subsequently an order issued to the first named commissioners to view, and the last named commissioners acting under it, they met all parties interested on the ground Dec. 27, 1887. After wonderful investigation, labor and care, they reported the three lines as filed in the clerk's office, with conditional instructions to the court with reference to the approval of the same.

" It appears from other testimony in the case that the stricken off commissioners afterwards met on the ground and viewed under the same order, but no report of what they found or did appears. All proceedings under and by virtue of said petition of 61, December Sessions, 1886, are held to be irregular and void and were, no doubt, in the end so considered by the court at that time.

" Dismissing the ninth exception brings the court to the point, under the act of assembly, of taking such action upon the line ascertained and proposed by the present commissioners to be established as shall appear just and reasonable.

" I have already disposed of the four different lines on file in the clerk's office, previous to the one now under consideration. The first of these, the Benjamin line of 1804, because entirely out of joint and not made by authority of law.   The second, the McHenry commission and line of 1859, and the West commission and line of 1874, for the reason that both are circuitous and not direct according to the one originally adopted by the court, asked for by the petitions of the citizens and called for by the orders issued.   The third, the Judge Eldred commission and line of 1885, because neglected or overlooked, abandoned and effaced by the flood of 1889.   But enough of it emerged and remained to verify the correctness of the line of the commission of 1889.

" In their report they say that 'having inquired into the propriety of granting the prayer of the petition, in the said order mentioned, they proceed to view, survey, ascertain and establish the boundary line between Plunkett's Creek and Shrewsbury townships, in Lycoming county, making a plot or draft of said division line as is within the boundaries of Lycoming county. . . . Commencing at a stone heap near a hemlock tree on the north side of the Genesee road leading to Hill's Grove, and on land of Elmer Reeder, the southeast corner of Elkland (now Plunkett's Creek township), thence in a direct line to the Big Bend of Loyalsock creek, above what is commonly called Brimstone Falls.' . . . . They further report ' that they are of the opinion, from all the evidence of both the inhabitants and the records produced before them, that the two points, viz.: the stone heap near the hemlock tree on the north side of the Genesee road leading to Hill's Grove, being the southeast corner of Elkland (now Plunkett's Creek township), the northeast corner of Wolf and Shrewsbury cornering there, and the Big Bend of Loyalsock creek, are the two distinct corners that have been recognized for fully three fourths of a century past and cannot be disregarded ; and a direct line between the two points which your commissioners have established and marked by monuments and witnesses on the ground

is the only correct line that can, in justice to and for the convenience of the inhabitants of both townships, be established. We are, therefore, of the opinion that the prayer of the petitioners should be granted accordingly.'

" Now, February 24, 1891, for the reasons given, the exceptions are dismissed and the report of the commissioners confirmed absolutely, as establishing the line as run and reported as, and for the boundary line between Plunkett's Creek and Shrewsbury townships, as originally adopted by the court in 1803.

" I ask indulgence of all concerned for this voluminous opinion, believing that the condition in which I found the case, the earnestness and ability of the counsel engaged in it, and its importance to the parties interested required a full examination. Costs for taking depositions and the record costs to be paid by the county of Lycoming."

An appeal was taken on behalf of Shrewsbury township.

*Errors assigned* were, (1, 2, 5) lack of jurisdiction because the report of 1874 confirmed by the court was on record; (3, 4) the line having been established, this proceeding should have been to alter it; (6, 7, 8) because the commissioners without authority, instead of running the line of 1804, located a new line; (9) because the proceedings instituted in 1885 and 1887, relative to the location of this boundary line, were still pending and undetermined; (10, 11, 12) certain findings of fact; and (13) the decree entered, quoting it.

*John G. Reading*, Jr., and *A. D. Hower*, *O. G. Kaupp* with them, for appellant.

*Henry C. Parsons*, *John J. Reardon* with him, for appellee.

PER CURIAM, March 28, 1892 :

We find no error in this record. It was urged, however, that the report of the commissioners, made in 1874, having been confirmed by the court, was final and conclusive. This might have been so had those proceedings been authorized by any act of assembly. They were not authorized by the act of April 15, 1834, P. L. 539, or by any other act which has been called to our attention. We are of opinion that the petition filed in 1874, and the proceeding under it, are wholly void.

Judgment affirmed.